[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
By writ, summons and complaint dated May 2, 2000, the plaintiff, Paul Martin, commenced this action, seeking, inter alia, a dissolution of his marriage to the defendant, Monica Martin.
After a full trial, the court, based upon the preponderance of the credible, relevant, and legally admissible evidence, and the reasonable, logical and lawful inference to be drawn therefrom, finds, determines and rules as follows: CT Page 3692
The plaintiff, and the defendant whose birth name was Monica Geveau, were married at Milford, Connecticut on July 28, 1979.
Both parties have resided in this state for at least twelve months preceding the date of the filing of this complaint.
There is one minor child, issue of the marriage, namely Jennifer Martin, who was born on April 1, 1983.
No other children have been born to the defendant since the date of the marriage.
No governmental agency is contributing to the support of any of the parties hereto.
The marriage of the parties has broken down irretrievably.
This is a first marriage for both parties.
The plaintiff is 45 years old, the defendant is 43. Their daughter, Jennifer, is seventeen years old and will reach her majority on April 1, 2001. Jennifer will graduate from high school in June of 2001.
At the time of the marriage the defendant was employed as a stock clerk. During the first three years of the marriage the defendant worked part time as a telemarketer and later in a deli. She grossed $150 per week in earnings.
Shortly before the birth of Jennifer, the defendant left work and became a full time homemaker and did not work except for approximately five years from 1990 to 1995 as a video store clerk earning $150 per week. The defendant, with the agreement of the plaintiff, focused on her role as a homemaker and the primary caretaker of Jennifer, who achieved admission to the honor society, participated in SADD and competed on the tennis team while maintaining a high standing in her academic pursuits.
The plaintiff is employed as a quality assurance engineer with an expertise garnered over many years in the work force. He has been continuously employed throughout the marriage and listed his 1999 salary in excess of $100,000 including bonuses. His financial affidavit indicates a base salary of $65,000 per year, excluding bonuses.
Since 1992, the plaintiff has engaged in extramarital affairs on two occasions, each of which involved his co-workers. The defendant was informed of the 1992 affair when the husband of a co-worker came to her CT Page 3693 home and informed her that the plaintiff was having an affair with his wife. The defendant sought counseling to salvage the marriage but the plaintiff refused to attend the sessions.
The plaintiff testified that he was seeking a dissolution of the marriage because of the defendant's untidy housekeeping and her refusal to attend work related events. The evidence submitted by the plaintiff, which indicated clutter, was a picture of a room used for storage and a picture of their daughter's room which can be described as manifesting teen-age disarray, a not uncommon phenomenon.
The court assigns the breakdown of the marriage as being caused primarily by the infidelity of the plaintiff.
Based on the mandates of General Statutes Sections 46b-81 and 46b-82, the court orders the following property distributions, custody, alimony and support awards.
The parties shall have joint legal custody of their daughter with primary residence with the wife subject to the plaintiff's reasonable right of visitation.
The plaintiff is to pay to the defendant the weekly sum of $190 as child support, until Jennifer graduates from high school.
The plaintiff shall maintain medical and dental insurance for Jennifer so long as she remains eligible by age or as a student and shall be responsible for unreimbursed medical expenses.
The parties interest in the marital home shall be apportioned as follows.
On or before June 26, 2001, the defendant shall quit claim her interest in the marital home to the plaintiff who shall pay to the defendant the sum of $55,000.
If the plaintiff is unwilling or unable to pay to the defendant $55,000 in exchange for her quit claim deed of her interest in the property on or before June 26, 2001, the property shall be placed on the market and the proceeds after the payment of liens on mortgage and costs of sale shall be divided 60% to the defendant and 40% to the plaintiff
The defendant may remain in the marital home until the premises are sold and shall be responsible for one-half of the mortgage, taxes and insurance on the premises, the utilities and maintenance cost of the home. CT Page 3694
The plaintiff shall pay one-half of the mortgage, taxes and insurance on the home.
The plaintiff shall pay to the defendant as periodic alimony the sum of $300 per week for a period of four years from the date of this judgment; after that date, the plaintiff shall pay to the defendant the sum of $200 per week as periodic alimony for an additional period of six years.
The plaintiff shall transfer title to the Honda Civic automobile to the defendant who will assume sole liability for taxes, insurances and car payments associated therewith.
The plaintiff shall maintain life insurance available to him under the terms of his employment at no or reasonable cost, naming the defendant and Jennifer as beneficiaries for so long as the plaintiff's obligations exist under this judgment.
The plaintiff shall pay to the defendant the sum of $3,000, within 90 days, as counsel fees.
Accordingly, a decree may enter dissolving the marriage and incorporating therein the aforesaid finding, rulings, property distributions and awards of the court.
DANIEL F. SPALLONE JUDGE TRIAL REFEREE